UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

      Scott M. Goldstein,                Case No. DL07-04566
                                        Chapter 7
                                        Hon. Scott W. Dales

_____ Debtor./

Habbo Fokkena,
United States Trustee
                      Plaintiff,

v.                                 Adv. Pro.  08-  _____

Scott M. Goldstein,

_____ Defendant.

**UNITED STATES TRUSTEE'S COMPLAINT TO DENY OR REVOKE DISCHARGE**

      Habbo Fokkena, United States Trustee for the Michigan/Ohio Region IX, asks the Court, pursuant to his authority 11 U.S.C. §307 and 28 U.S.C. §586 (a)(3)(G), to deny the Debtor's discharge pursuant to 11 U.S.C. §727(a).  In support of his complaint, the United States Trustee states the following:

**I.    JURISDICTION AND VENUE**

    1.    This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334, and 11 U.S.C. §727.  This is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(J).

    2.    Habbo Fokkena ("U.S. Trustee"), is the duly appointed United States Trustee for the

1

Western District of Michigan, and has standing to bring this motion pursuant to 28 U.S.C. §586(a)

and 11 U.S.C. §§727 and 307.

    3.    Debtor-Defendant, Scott Goldstein, is an adult residing in this District at 16989

Kernwood in East Lansing, Michigan.

    4.    Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).


## II.    PROCEDURAL FACTS

    5.    On June 26, 2007, the Debtor filed a voluntary petition for relief under Chapter 7 of

the Bankruptcy Code[1].

    6.    Debtor is an attorney licensed to practice law in the State of Michigan.  Notably, his

firm's website at the time this case was filed included a "Bankruptcy Info Center" link.  Clicking on

this link led one to a screen which stated, "For effective bankruptcy representation, contact the

bankruptcy lawyers of Scott M. Goldstein, Attorney at Law, in East Lansing, Michigan today."

    7.    Kelly M. Hagan was appointed Chapter 7 trustee and continues to serve in that

capacity.

    8.    Debtor filed Schedules A through J, Statement of Financial Affairs ("SOFA"), and

Chapter 7 Statement of Current Monthly Income and Means Test Form ("Means Test Form") with

the petition.  He then filed a series of amendments including:  Amended Schedules A, D, and SOFA

on July 3, 2007, Second Amended Schedule D on July 20, 2007, Amended Schedules I and J, and

Second Amended SOFA on July 24, 2007, Third Amended Schedule D on August 9, 2007, and

---

[1]Debtor also filed a chapter 7 petition as managing member on behalf of Goldstein
Enterprises under case number 07-04436.  The petition in *In re Goldstein Enterprises* was filed
on June 18, 2007.

Fourth Amended Schedule D and Amended Schedule F on August 14, 2007. All of these bankruptcy documents were filed under penalty of perjury.

9.      Debtor prepared his own Petition, Schedules, and SOFA, and all amendments referenced in the previous paragraph. Transcript of Section 341 Meeting of Creditors, 8-17-07, p. 5, attached as **Exhibit 1**.

10.      On July 26, 2007, a Disclosure of Compensation of Attorney for Debtor was filed with the Court by attorney Peter Teholiz together with a retainer agreement executed by attorney Teholiz, Scott Goldstein in his individual capacity, and Scott Goldstein as sole member of Goldstein Enterprises. That retainer agreement was signed on February 20, 2007, four months prior to the filing of the petition in this case. According to the Debtor, he asked Mr. Teholiz bankruptcy-related questions both before and after the filing of the petition, but Mr. Teholiz "never did any actual paperwork or filing." Transcript of 2004 Examination of Scott Goldstein, **Exhibit 2**, p. 46-47.

11.      On August 17, 2007, the Debtor's first meeting of creditors held pursuant to 11 U.S.C. §341 began, but was not completed. That meeting was attended by attorneys for several creditors, and attorney Jeffrey Chip for the Debtor. Ultimately, the meeting was not completed, and was adjourned due to Debtor's inadequate, incomplete, and inaccurate Schedules and SOFA's.

12.      Debtor was asked by trustee Hagan at the Section 341 Meeting of Creditors ("341 meeting"), "And other than any amendments that had been filed, are there any material changes to advise me of?" Debtor testified under oath that, after consulting with his attorney, he wanted to advise Ms. Hagan of a "very small account from my parents' estates." Debtor was then asked, "Okay, other than those changes, is it your belief that these schedules as amended and the statement of financial affairs are true and accurate to the best of your information, knowledge and belief?"

3

Debtor, testifying under oath, answered, "yes, yes."  Exhibit 1, p. 6.

13.    On December 13, 2007, attorney Charles Cuzydlo filed an appearance on Debtor's behalf.

14.    Between the time the Section 341 meeting began and the time Mr. Cuzydlo filed his appearance, the following occurred in Bankruptcy Court:  a motion to dismiss filed by Debtor was litigated and denied; a motion to compel Debtor to file complete and accurate schedules was filed by the Chapter 7 trustee, litigated and granted; a motion to compel Debtor's attendance at a rescheduled Section 341 meeting was filed by the Chapter 7 trustee, litigated and granted; and a motion to examine the Debtor pursuant to Rule 2004 was filed by the U.S. Trustee, litigated and granted.  The parties also briefed and argued the applicability of the Fifth Amendment right against self-incrimination to the above motions.

15.    On December 21, 2007, Debtor filed under penalty of perjury an amended Means Test, SOFA, and Schedules A - J ("Cuzydlo amendments").

16.    On February 11, 2008, Debtor was examined pursuant to Federal Rule of Bankruptcy Procedure 2004.  Debtor testified under oath that he believed the information in his bankruptcy documents, including all amendments, was complete and accurate and required no changes.  Exhibit 2, pp. 15-16, lines 20-25, 1-5.  Specifically, Debtor was asked, "do you believe any changes or amendments are needed to correct any information?"  Debtor answered "no."  *Id*.

III.    **UNDISCLOSED TRANSFERS**

17.    Question 5 on the SOFA requires Debtor to disclose all property repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the

4

seller, within one year immediately preceding the filing of the bankruptcy case. On his original SOFA and all amendments filed during the first six months of this case - a total of three SOFAs - Debtor checked the box marked "none" at Question 5.

18.     Question 7 of the SOFA requires Debtor to disclose all gifts or charitable contributions made within one year preceding the filing of his case. On his original SOFA and all amendments filed during the first six months of this case, Debtor checked the box marked "none" at Question 7.

19.     Question 8 of the SOFA requires Debtor to disclose losses from theft. At question 8 of each of Debtor's four SOFAs, he failed to disclose any losses from theft.

20.     Question 10(a) of the SOFA requires Debtor to disclose all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years prior to the filing of his case. Question 10(b) of the SOFA requires Debtor to disclose all property transferred to a self-settled trust or similar device of which the Debtor is a beneficiary within 10 years of the filing of his case. On his original SOFA and all amendments filed prior to the Section 341 meeting, Debtor checked the box marked "none" at Questions 10(a) and (b).

**A.     Richland Property**

21.     On or about August 30, 2006, less than one year prior to filing this case, Debtor and his non-filing spouse transferred property commonly known as 10963 M-43, Richland, Michigan ("Richland property") to a trust in his childrens' names. Debtor knew of this transfer because he signed the Quit Claim Deed that accomplished the transfer to the trust.

5

22.     According to the Debtor's testimony at the Section 341 meeting, he made a $62,500 down payment on the Richland property when he purchased it on or about August 30, 2006.  Exhibit 1, pp. 20-25.

23.     Debtor failed to disclose this transfer in his first three SOFAs.

24.     Debtor failed to disclose the transfer at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

25.     Further, Debtor failed to disclose the transfer when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  Debtor simply said "yes" and failed to advise the trustee of this transfer.


**B.     Timberview Property**

26.     On or about March 2, 2007, approximately 3 months prior to filing, Debtor and his wife sold property located at 2056 Timberview, Okemos, Michigan ("Timberview property") for $660,000.00.  Debtor knew of this transfer because he signed the Warranty Deed to accomplish the sale.

27.     Debtor failed to disclose this transfer in his first three SOFAs.

28.     Debtor failed to disclose the transfer at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

29.     Further, Debtor failed to disclose the transfer when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  Debtor simply said "yes" and failed to advise the trustee of this transfer.

30.     Specifically, at the August 17, 2007, Section 341 meeting, the Chapter 7 trustee, Kelly

Hagan, asked the Debtor, "Other than [the Richland property and properties on Autumnwood and Kernwood], in the last six years, have you had an ownership interest or any other interest in any other homes, vacant land or other real property?" Exhibit 1, p. 7, lines 7-10. Debtor testified:

> A:    Six years. It may be right before the six-year time period, but we lived at 2056 Timberview Drive in Okemos, Michigan, 48864.

Exhibit 1, p. 7, lines 11-13. Later during the Section 341 meeting, Debtor testified that he and his wife sold the Timberview property:

> A:    ...It was sometime towards the end of last year.
>
> Q:    End of 2006?
>
> A:    Yeah. I think we had it for about a year and-a-half; we had people renting it, yeah.

Exhibit 1, p. 94, lines 9-14. Debtor testified later during the same Section 341 meeting when asked when the closing for the sale of Timberview took place:

> A:    I want to say it was this year sometime, maybe January or February or March; maybe March – January or February, March.

Exhibit 1, p. 99, lines 5-10.


**C.    Transfer of Cadillac, Suburban, Hummer, and Mustang**

31.    On or about May of 2007, the month before this case was filed, Debtor turned in a leased Cadillac to an automobile dealership. Exhibit 2, p. 47, lines 16, 24-25. The Cadillac was leased in the Debtor's name. *Id*., p. 52, lines 4-5.

32.    On or about May of 2007, the month before this case was filed, Debtor turned in a

leased Chevy Suburban to an automobile dealership.  Exhibit 2, p. 47, lines 16, 24-25.  The

Suburban was leased in the Debtor's name.  *Id*., p. 52, lines 6-7.

33.    On or about May of 2007, the month before this case was filed, Debtor turned in a

leased Hummer to an automobile dealership.  Exhibit 2, p. 47, lines 16, 24-25.  The Hummer was

leased in the Debtor's name.  *Id*., p. 52, lines 8-9.

34.    Within one year of the filing of this case, Debtor owned a 2005 Ford Mustang that

he turned into Independent Bank.

35.    Debtor failed to disclose these transfers in every SOFA he has filed.

36.    Debtor failed to disclose these transfers at the August 17, 2007, Section 341 meeting

when Ms. Hagan asked if there were any material changes to advise her of.

37.    Further, Debtor failed to disclose these transfers when asked at the August 17, 2007,

Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  Debtor simply

said "yes" and failed to advise the trustee of these vehicle transfers.


   **D.    Rolex Watch**

38.    On or about January of 2007, Debtor sold a Rolex watch to a friend.  Exhibit 2, p.

224, lines 4-17.  Debtor sold the watch for $7,500, which, upon information and belief, may have

been below fair market value.  Exhibit 2, p. 224, lines 22-23.

39.    Debtor failed to disclose the sale of the Rolex in every SOFA he has filed.

40.    Debtor failed to disclose the sale of the Rolex at the August 17, 2007, Section 341

meeting when Ms. Hagan asked if there were any material changes to advise her of.

41.    Further, Debtor failed to disclose the sale of the Rolex when asked at the August 17,

2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  Debtor simply said "yes" and failed to advise the trustee of the sale of the Rolex.

      **E.**      **Boat**

42.      Within one year prior to the filing of this case, Debtor sold a boat or turned it into a marina for the marina to sell on his behalf.  Exhibit 1, p. 89-91.

43.      Debtor failed to disclose this transfer in his first three SOFAs.

44.      Debtor failed to disclose the transfer at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

45.      Further, Debtor failed to disclose the transfer when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  Debtor simply said "yes" and failed to advise the trustee of this transfer.

46.      Specifically, Ms. Hagan asked the Debtor at the August 17, 2007 Section 341 meeting if he had a boat at his lake house.  Debtor answered, "no."  Exhibit 1, p. 36, lines 20-21.  Upon later questioning during the same meeting, Debtor was asked again about a boat he had listed on the May 2005 financial statement, and about his prior testimony when questioned by the trustee.  Debtor stated, "She asked me if I had a boat at the other house, and I never did.  I had a boat that we sold a long time ago."  Exhibit 1, p. 61, lines 9-12.  When the trustee reminded the Debtor that transfers within the previous two years must be disclosed, he stated the transfer of the boat was more than two years before the bankruptcy filing.  *Id.*, lines 21-25.  It was only under later questioning at the same meeting that Debtor admitted the boat was transferred in summer of 2006.  *Id.*, pp. 89-91.

### F.    Repossessed Vehicles

47.    Within one year prior to the filing of this bankruptcy case, a Dodge Viper and a Dodge truck, both titled in Debtor's name, were repossessed.  Debtor knew of the repossessions because he assisted in making the vehicles available for repossession.

48.    Debtor failed to disclose this transfer in his first three SOFAs.

49.    Debtor failed to disclose the repossessions at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

50.    Further, Debtor failed to disclose the repossessions when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  Debtor simply said "yes" and failed to advise the trustee of these vehicles and their repossession.

### G.    Theft

51.    Debtor testified at the Section 341 meeting on August 17, 2007, as well as at the 2004 examination that he has been the victim of theft at the hands of Todd Lacosse and/or Doug Nylander.

52.    Debtor listed no loss from theft in any of the SOFAs he has filed.

53.    Debtor failed to disclose the losses from theft at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

54.    Further, Debtor failed to disclose the losses from theft when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  Debtor simply said "yes" and failed to advise the trustee of any loss from theft.

IV.     **UNDISCLOSED ASSETS**

55.     Schedule B requires the Debtor to disclose his personal property and its value including, but not limited to, cash on hand at the time of filing (Schedule B, number 1), any "household goods and furnishings, including audio, video, and computer equipment," (Schedule B, number 4), wearing apparel, (Schedule B, number 6), automobiles, trucks, trailers, and other vehicles (Schedule B, number 25), furs or jewelry (Schedule B, number 7). Debtor checked the box marked "none" for each of these categories on the Schedule B he completed and filed.

56.     Schedule G requires the Debtor to disclose all executory contracts or unexpired leases. Debtor listed none on both his original and Amended Schedule G.

        A.     **Household Goods and Furnishings**

57.     Debtor failed to disclose his household goods and furnishings at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

58.     Further, he failed to disclose his household goods and furnishings when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate. He simply answered "yes."

59.     However, upon specific questioning by trustee Hagan at the August 17, 2007, Section 341 meeting, Debtor admitted that he did in fact own household goods or furnishings at the time of filing. Exhibit 1, p. 22, lines 4-6.

60.     Furthermore, Debtor prepared a financial statement dated May 23, 2005, which he submitted to a bank, and in which he stated he owned $100,000 worth of household furnishings. **Exhibit 3**. These household furnishings are not accounted for in Debtor's bankruptcy filings.

61.     In addition, after admitting to the Chapter 7 trustee that he does in fact own household goods, Debtor prepared at Ms. Hagan's request an inventory of household items in which he valued all household goods and furnishings at $9,950.00.  **Exhibit 4**.

62.     Debtor testified regarding household goods and furnishings at both the August 17, 2007, Section 341 meeting and the 2004 examination as follows:

> Q:    The household furnishings that you've listed [on the May 23, 2005 financial statement] consisted of what?
>
> A:    At the time I was in Timberview.  They consisted of - I was kind of figuring the redecorating we had done and things that we had purchased, like couches and stuff like that, so a lot of -

Exhibit 1, pp. 91-92, lines 25, 1-5.

> A:    ... And it was - it was also used for interior design like some painting and window coverings and some new carpeting in some new areas.
> Q:    And what else?
>
> A:    That was it that I can think of.

Exhibit 2, p. 76, lines 16-21.

> Q:    Was any of [the money you borrowed from Comerica] used to decorate and furnish your present residence?
>
> A:    No.
>
> Q:    Is it your testimony that the furniture in your present residence, that none of the furniture in your present residence is new?
>
> A:    No.  There is a couple pieces that are new but most of it -
>
> Q:    How much of it?  Tell me what is new.
>
> A:    I think the living room couch is new.  The dining room table. The kitchen table would be new.  There might be some like

12

odds and end chairs that are new, maybe some sun room - like a wicker sun room couch that's new and a small like love seat.

Q:    And the rest of the furnishings are furnishings from the Timberview residence?

A:    The furniture, yes.

Q:    The furniture.   Now, what was the square footage of Timberview?

A:    Oh, probably about 55, 45 to 5,500 square foot.

Q:    And the present square footage of your house it?

A:    About 6,600.

Q:    And did you testify, and forgive me because I don't have a great recollection, today of leaving some pieces at Timberview?

A:    Selling some pieces when I left.

Exhibit 2, pp. 230-231, lines 14-25, 1-14.

Q:    And you moved into the new house when?

A:    In July of 2005.

                               * * *

Q:    But it's your testimony you took all of the furniture from approximately a 5,500 square foot house, except those pieces you described, and left and moved them into 6,500 square feet and only bought the additional furniture that you have described?

A:    Right.  I think I also bought a piece of exercise equipment, too.

Exhibit 2, pp. 231-232, lines 25, 1, 18-24.

63.    It appears that Debtor's testimony regarding household goods and furnishing is not

13

truthful.  Attached as **Exhibit 5** are the invoices from Tunde Interior Design.  These records show

that Debtor purchased $76,894.66 worth of household goods and furnishings for his current home,

the Kernwood property, including:

> Chests, $3,257.00
> Mirrors, $555.00
> Lamps, $1,372.85
> Trunks, $249.00
> Round table, grape, $278.50
> Black vase, $98.50
> 2 Lex Vanessa chairs, $1,500 each
> Coffee table $1,098
> 2 mirrors, $2,258.00 each
> Leather framed mirror, $924.00
> Raymond Waites Bench, $1,584.00
> Accent Table, $1,269.00
> Console Table, $716
> Floor lamp, $492.00
> Dining Room area rug, $1,253.00
> 2 Poppy artwork, $916.80
> Lamp table, $884.80
> Dining Room Chandelier, $2,352.00
> Dining room chair fabric, $1,146.75
> 2 Cameroon Corsett Chairs and Grand Ottoman, $4,996.00
> Two Tier Table for Great Room, $636.80
> Rhapsody Accent Table and Ariel Tier Table, $1,592.00
> Accent Chest with Tray Top for Master Bedroom, $1,264.00
> Glass Mantle for lower level fireplace, $2,880.00
> Custom built foot stool, $227.50
> Southern Furniture Settee and Ottoman, $2,323.20
> Entertainment Center with left and right media for great room, $5,196.00
> Settee and ottoman for Foyer, $2,022.40
> 2 Toss Pillows, $168.00
> Barca Lounger for Bedroom, $1,176.00
> Fabric for Master Bedroom Barca Lounger, $403.40
> Bentley Churchill chair for great room, $1,357.60
> Fabric for Great Room Bentley Churchill Chair, $936.00
> Accessories and Lighting from Lighting Concepts, $10,183.20
> Custom area rug for Sun Room, $821.94
> Master Bedroom custom headboard, $1,079.07
> Euro Throw for Master Bedroom, $1,879.75

14

> 1 Pillow Shams for Master Bedroom, $656.80
> Bedskirt for Master Bedroom, $377.40
> Sofa, chaise, and 2 pillows for kitchen, $2,787.60
> Southern Furniture Sofa and 3 pillows for Great Room, $2,028.00
> Southern Furniture ottoman and chaise, $2,184.00
> Tolbert leather chair and ottoman for Game Room, $3,624.00
> Pillow, $131.00

This total does not include an additional $15,014.20 for window treatments, or the amounts for painting, electrical, labor, and delivery.

64.     The interior design invoice is for work performed between July and November of 2005.  This list does not account for all of the items contained in the Debtor's household inventory (Exhibit 4).  Further, neither this list nor the household inventory account for items like bed sheets, towels, dishes, silverware, cookware, or other common household goods.  Even discounting for the fact that the items listed above are used, it appears that Debtor, once he finally did list household goods on Schedule B, grossly understated their value.

65.     Notably, Debtor failed to list Tunde Interior Design as a creditor in this case despite the fact that he does owe money to Tunde.

**B.     BMW**

66.     At the time of filing, Debtor leased a BMW which was not listed on Schedule B or G.

67.     Debtor failed to disclose the BMW at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

68.     Further, he failed to disclose the BMW when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  He simply answered

15

"yes."

69.     Debtor failed to disclose the BMW until questioned at his 2004 examination. Exhibit 2, pp. 112, 136-137.

### C.     Land Rover

70.     At the time of filing, Debtor also leased a 2006 Land Rover which was not listed on Schedule B or G.

71.     Debtor failed to disclose the Land Rover at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

72.     Further, he failed to disclose the Land Rover when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  He simply answered "yes."

73.     Debtor failed to disclose the Land Rover until questioned at his 2004 examination. Exhibit 2, pp. 112, 136-137.

### D.     Jewelry and Furs

74.     Debtor failed to disclose any jewelry and furs at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

75.     Further, he failed to disclose any jewelry and furs when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  He simply answered "yes."

76.     However, upon specific questioning by trustee Hagan at the August 17, 2007, Section

16

341 meeting, Debtor testified that he owns jewelry worth "maybe under a thousand dollars, maybe even under 500...."  Exhibit 1, p. 24, lines 9-16.

77.    In the financial statement Debtor prepared dated May 23, 2005, Debtor listed jewelry and furs worth $150,000.  Exhibit 3.  Debtor has not listed jewelry and furs having anything close to this value on any of his bankruptcy documents, nor has he disclosed the transfer of jewelry and furs of this value on his SOFA.

### E.    Wearing Apparel

78.    Debtor failed to disclose his wearing apparel at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

79.    Further, he failed to disclose his wearing apparel when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  He simply answered "yes."

80.    However, Debtor has appeared at both the first and second days of the 341 meeting and the 2004 examination wearing suits.  He clearly does own wearing apparel.  Upon specific questioning by trustee Hagan at the August 17, 2007, Section 341 meeting, Debtor admitted that he did in fact own wearing apparel at the time of filing.

### F.    Cash on Hand

81.    Debtor testified upon questioning by trustee Hagan at the August 17, 2007, 341 meeting that he generally carried "maybe a hundred dollars at a time, or less."  Exhibit 1, p. 18.

17

G.    **Closed Bank Account**

82.    Question 11 of the SOFA requires Debtor to list any closed financial accounts held in the name of the debtor or for the benefit of the debtor which were closed, sold or otherwise transferred within one year preceding the filing of the case.  Debtor listed two accounts.  The first was a securities account at Comerica Bank.  The second was an IRA account at Vanguard related to his mother's estate.

83.    Within one year prior to the filing of this case, Debtor closed a checking account at Comerica Bank.  Exhibit 1, p. 63, lines 19-22, p. 75.

84.    Debtor did not list this closed account in any of his four SOFAs.

85.    Debtor failed to disclose this account at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

## V.    <u>UNDISCLOSED INCOME</u>

86.    Question 1 of the SOFA requires the Debtor to disclose gross income he received from employment, trade, or profession, or from operation of the Debtor's business from the beginning of the calendar year to the date the case was filed, as well as for the two years immediately preceding the calendar year in which the case was filed.  In other words, Debtor was required in Question 1 to disclose income for 2007 up to the date of filing, all of 2006, and all of 2005.

87.    Question 2 of the SOFA requires the Debtor to disclose income from other than employment, trade, profession, or from operation of the debtor's business during the two years prior to the filing of the bankruptcy.

88.    Schedule I requires the Debtor to disclose his current income and that of his spouse,

18

and includes information regarding Debtor's dependents, employment, payroll deductions, wages, and income from other sources.

89.    Schedule J requires the Debtor to disclose current expenditures for him and his family for a variety of categories.

### A.    Income from Law Practice

90.    Debtor listed $56,300.00 in income from Goldstein Law Offices from "December - Present" at question 1 of his original SOFA.  On his Second Amended SOFA, Debtor reduced the amount listed for the same time period to $24,000.00.  Debtor did not list any income for the two years prior to the filing of this case, 2006 and 2005.  Debtor also failed to disclose any income from any source other than Goldstein Law Offices.

91.    Upon information and belief, Debtor did receive income from his law practice in both 2005 and 2006.

92.    Debtor failed to disclose any income from his law practice for 2005 and 2006 at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

93.    Further, he failed to disclose any income from his law practice for 2005 and 2006 when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  He simply answered "yes."

94.    In addition to paying income to Debtor, Debtor's law practice also paid many of the expenses listed on Schedule J prior to the filing of the bankruptcy and continues to pay some.  The expenses paid by the law office included vehicle payments, car insurance, gas and vehicle

maintenance (Exhibit 2, pp. 51, 56, 92), health insurance premiums (*Id*., p. 92), cell phone (*Id*., p. 96).  Bank statements for his law office account also show that the law office paid other household expenses including mortgage payments and cable television bills.

95.    Debtor's Schedule I and J are not accurate in that they fail to disclose the household expenses paid by the law practice.

96.    Debtor failed to disclose any income from his law practice for 2005 and 2006 at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

97.    Further, he failed to disclose any income from his law practice for 2005 and 2006 when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  He simply answered "yes."

### B.    Income from Goldstein Enterprises

98.    Debtor testified at his 2004 examination that he took payments from Goldstein Enterprises "for a while" to cover a $6,000 or $6,700 mortgage payment.  He testified that he stopped taking payment from Goldstein Enterprises in "[p]robably mid '06."  Exhibit 2, p. 198, lines 4-9, p. 203, lines 10-24.  Goldstein Enterprises also paid for a payment on the BMW or insurance on the vehicle.  Exhibit 2, p. 204, lines 2-4.  At other times, Goldstein Enterprises also paid the mortgage payments on the Autumnwood property and for Debtor's disability or life insurance.  Exhibit 2, pp. 207-208, lines 18-25, 1-8.  Debtor also testified at the 2004 examination that he took about $6,000 per month from Goldstein Enterprises for six months to one year ending in August 2006.  Exhibit 2, p. 153, lines 14-25.

20

99.     Debtor failed to disclose any income from Goldstein Enterprises on his first three SOFAs or his Schedule I.   This includes income paid as wages, or as payment of household expenses.

100.     Debtor failed to disclose any income of any variety from Goldstein Enterprises at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

101.     Debtor failed to disclose any income of any variety from Goldstein Enterprises when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.   He simply answered "yes."


**C.     Rental Income**

102.     Debtor testified at his 2004 examination that he received rental income from a Mr. Kiebler who was renting the property on Autumnwood.   Exhibit 2, p. 59, lines 18-19.   Mr. Kiebler paid $3,000 or $3,100 per month for 6-10 months in 2006.   *Id*., pp. 59-60, lines 18-25, 1-7.

103.     Debtor also collected $3,500 of monthly rental income from his Timberview property for approximately six months beginning in approximately September or October of 2006.   Exhibit 1, p. 96, lines 1-8, 18-21.

104.     No rental income was disclosed on any SOFA filed by the Debtor.

105.     Debtor failed to disclose any rental income at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

106.     Debtor failed to disclose any rental income when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.   He simply

answered "yes."

107.    It was not until much later in the August 17, 2007 Section 341 meeting, upon questioning by a creditor's attorney that Debtor disclosed this rental income.

### D.    Other Income

108.    In the two years prior to filing, Debtor had other income including dividends, IRA distributions, interest, and capital gains.

109.    Debtor did not disclose this income on any of his first three SOFAs.

110.    Debtor failed to disclose this other income at the August 17, 2007, Section 341 meeting when Ms. Hagan asked if there were any material changes to advise her of.

111.    Debtor failed to disclose this other income when asked at the August 17, 2007, Section 341 meeting if the Schedules and SOFA, as amended, were true and accurate.  He simply answered "yes."

## VI.    UNACCOUNTED FOR ASSETS

112.    Debtor's mother died in December of 2002.  After her death, Debtor inherited approximately $500,000 in cash and securities.  Exhibit 1, p. 15; Exhibit 2, p. 69.

113.    In addition, Debtor inherited his mother's house, which he sold for a net profit of $130,000.  Exhibit 1, p. 17; Exhibit 2, p. 69.

114.    Debtor also inherited his mother's car which was sold for a net profit of $24,000 to $26,000.  Exhibit 2, p. 72, lines 4-12.

115.    Debtor testified at the 2004 examination that everything inherited from his mother,

with the exception of a $200,000 set off at Comerica Bank, has been spent "[t]hrough putting money back in [Goldstein Enterprises], through spending money unwisely. Just through spending." Exhibit 2, p. 69, lines 17-25; Exhibit 1, p. 15-17.

116.    The set off at Comerica Bank was the result of a $200,000 loan Debtor obtained and spent "... probably to pay off some credit cards back then. It may have been money towards the Timberview house. I can't remember." Exhibit 2, p. 230, lines 4-13.

117.    Debtor's May 23, 2005 financial statement[2] (Exhibit 3) reflects assets with a total value of $5,830,000 including the following:

    a.    $95,000 cash in accounts in his name at Comerica ($50,000), Standard Federal ($20,000), and Morgan Stanley ($25,000);

    b.    $400,000 in securities in a Comerica brokerage account;

    c.    $250,000 in accounts and notes receivable;

    d.    $1,000,000 in real estate (with only $620,000 owing in mortgage debt);

    e.    $95,000 cash available from an IRA;

    f.    $150,000 in jewelry and furs;

    g.    $25,000 boat;

    h.    $100,000 household furnishings;

    I.    $65,000 car.

118.    Debtor also listed income from his law practice of $350,000 on that same financial

---

[2]It should be noted that a box is checked at the top of the financial statement indicating that the financial statement was being provided for individual credit with the instruction that the financial statement should be completed only as it applies to the applicant individually, and should not include information about a spouse or other person.

statement.  Debtor has not disclosed income for 2005 consistent with this figure on any of his bankruptcy documents.

119.    Debtor testified that the $95,000 IRA at Vanguard was spent as follows:

a.    It was cashed out in 2007 with the proceeds deposited into a joint account held by Debtor and his wife; $62,500 was used for a down payment on the Richland property; and the remainder for household expenses including "mortgage payment, with the vehicle payments, miscellaneous, food, gas, things like that."  Exhibit 2, p. 70, lines 12-25, p. 71, lines 8-25, p. 72, lines 1-3; and

b.    It was spent on bills both personal and for Goldstein Enterprises.  Half or a little more than half was used for Goldstein Enterprises, and some was used for the Richland down payment.  Exhibit 1, p. 85-88.

120.    Debtor testified that the $50,000 from the Comerica checking account listed on the financial statement is "gone."  It was "spent" on "various items" and "different expenses."  When asked what kinds of expenses it was spent on, Debtor testified, "I don't remember.  It was two years ago.  Maybe it was payments on things.  Maybe it was – I have no idea."  Exhibit 2, p. 125, lines 4-16.

121.    Debtor testified that the $25,000 in the Morgan Stanley account listed on the financial statement is "Spent.  Gone."  He testified it "could have been used for the Goldstein Enterprises. It could have been used for other things.  I have no idea."  Exhibit 2, pp. 125-126, lines 21-25, 1-2.

122.    In addition to the above assets and income, Debtor took out a $200,000 second mortgage on the Kernwood property.  He used the money "to do some decorating on the house and

reimburse for the money that I have used as a down payment." Exhibit 2, p. 75, lines 22-25.  Debtor

went on to say that this money was "Really, to reimburse money I had put down on the property....

$100,000 when I first bought it.  And it was - it was also used for interior design like some painting

and window coverings and some new carpeting in some new areas."  Exhibit 2, p. 76, 12-19.

## VII.   ADDITIONAL FALSE TESTIMONY

123.    Debtor was asked at the Section 341 meeting, "Other than [the Richland, Kernwood

and Autumnwood properties], in the last six years, have you had an ownership interest or any other

interest in any other homes, vacant land or other real property?"  Exhibit 1, p. 7, lines 2-10.  Debtor

testified under oath:

> A:    Six years.  It may be right before the six-year time period, but
> we lived at 2056 Timberview Drive in Okemos, Michigan,
> 48864.  That was before moving to Kernwood.

Exhibit 1, p. 7, lines 11-14.

124.    Debtor gave this testimony despite the fact that he owned or had an interest in two

other pieces of property within the six years prior to filing:  his mother's house, which he inherited,

sold and netted $130,000, and Timberview, which he sold on March 2, 2007, only three months

before filing bankruptcy.

125.    Debtor was asked at the Section 341 hearing, "What is the value of all of your

jewelry?  That would include wedding rings, watches, ear rings, tie tacks, anything like that, anything

that - you know, your mother left a ring and you consider it yours; if your wife had a ring -".  Exhibit

1, p. 24, lines 9-13.  Debtor then stated under oath:

> A:      Maybe under a thousand dollars, maybe even under 500; I
> mean, this isn't worth anything, like a wedding ring.  This is -

Exhibit 1, p. 24, lines14-16.

126.    Debtor gave this testimony despite having a Rolex watch and other jewelry that he later listed as having a value of $2,500 (or possibly $3,300).  Exhibit 2, pp. 227-228, lines 22-25, 1-10.  Furthermore, only two years prior to this bankruptcy filing, Debtor's financial statement listed jewelry and furs worth $150,000.  Exhibit 3.

127.    Debtor was asked at the Section 341 meeting, "In the year before you filed bankruptcy, other than anything we've already discussed, did you give away, transfer, dispose of, or sell any item having a value of a thousand dollars or more?"  Exhibit 1, p. 40, lines 17-20.  Debtor stated under oath:

> A:      I don't believe so, no.

Exhibit 1, p. 40, line 21.

128.    Debtor gave this testimony despite having sold a Rolex President watch in January of 2007, less than six months before filing bankruptcy, to a friend for $7,500.

129.    Debtor was asked at the Section 341 meeting, "In the year before you filed bankruptcy, did you repay any debt, in whole or in part, to a family member or friend?"  Exhibit 1, p. 41, lines 1-3.  Debtor asked for the question to be repeated at which point the Chapter 7 trustee asked "In the last year, have you repaid debt to a family member or friend, whether you repaid on it a little, a bunch or completely?"  *Id*., lines 5-7.  Debtor then stated under oath:

> A:      I don't believe so, no.

Exhibit 1, p. 41, line 8.

26

130.     Debtor gave this testimony despite having made monthly payments to satisfy a loan given by his mother and father-in-law.

131.     At question 9 of each of Debtor's first three SOFAs, he failed to disclose any payments to any person, including attorneys, for consultation concerning relief under the bankruptcy law.

132.     Prior to filing this case, Debtor paid attorney Peter Teholiz for advice regarding bankruptcy pursuant to a retainer agreement signed in February of 2007.

133.     Debtor stated at question 19 of his first amended Schedule J, "debtor's spouse was making the mortgage payments on the primary residence and the [Richland] vacation home." Debtor's wife has only $910 of monthly income.  While payments for some bills might be paid from an account in his wife's name, Debtor testified that he funds the account or accounts.

**COUNT 1:     DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE TRANSFER OF RICHLAND PROPERTY**

134.     The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

135.     Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

136.     Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

27

137.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of the Richland property to his childrens' trust in his first three SOFAs, each filed under penalty of perjury.

138.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of the Richland property to his childrens' trust while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

139.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of the Richland property to his childrens' trust while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

140.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

**COUNT 2:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE TRANSFER OF TIMBERVIEW PROPERTY**

141.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

142.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

143.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully

28

and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

144.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of the Timberview property in his first three SOFAs, each filed under penalty of perjury, despite the transfer occurring only three months prior to filing his bankruptcy case.

145.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of the Timberview property while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

146.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of the Timberview property while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

147.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

**COUNT 3:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE TRANSFER OF VEHICLES**

148.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

149.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a

debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

150.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

151.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of a Cadillac, Suburban, Hummer and Mustang in any Schedule or SOFA he has filed, each of which has been filed under penalty of perjury, despite the transfers of three of the vehicles occurring the month before filing his bankruptcy case.

152.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of these vehicles while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

153.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of these vehicles while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

154.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 4:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE TRANSFER OF ROLEX WATCH

155.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

156.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

157.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

158.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the sale of a Rolex watch in every SOFA he has filed, each of which was filed under penalty of perjury, despite the sale occurring only five months prior to filing his bankruptcy case.

159.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the sale of the Rolex watch while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

160.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the sale of the Rolex watch while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

161.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

**COUNT 5:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE TRANSFER OF BOAT**

162.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

163.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

164.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

165.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of the boat in each of the first three SOFAs he filed, each of which was filed under penalty of perjury.

166.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of the boat while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

167.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the transfer of the boat while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan

32

if the Schedules and SOFA, as amended, were true and accurate.

168.    The Debtor's unwillingness to be forthright in testifying about his assets, past and present is demonstrated by his testimony regarding the boat.  Ms. Hagan asked the Debtor at the August 17, 2007 Section 341 meeting if he had a boat at his lake house.  Debtor answered, "no." Exhibit 1, p. 36, lines 20-21.  Upon later questioning during the same meeting, Debtor was asked again about a boat he had listed on the May 2005 financial statement, and about his prior testimony when questioned by the trustee.  Debtor stated, "She asked me if I had a boat at the other house, and I never did.  I had a boat that we sold a long time ago."  Exhibit 1, p. 61, lines 9-12.  When the trustee reminded the Debtor that transfers within the previous two years must be disclosed, he stated the transfer of the boat was more than two years before the bankruptcy filing.  *Id*., lines 21-25.  It was only under later questioning at the same meeting that Debtor admitted the boat was transferred in summer of 2006.  *Id*., pp. 89-91.

169.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 6:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE REPOSSESSED VEHICLES

170.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

171.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

172.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

173.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose two repossessed vehicles, a Dodge Viper and a Dodge truck, in the first three SOFAs he filed, each of which was filed under penalty of perjury.

174.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose two repossessed vehicles, a Dodge Viper and a Dodge truck, while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

175.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose two repossessed vehicles, a Dodge Viper and a Dodge truck, while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

176.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

**COUNT 7:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE LOSSES FROM THEFT**

177.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

178.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

179.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

180.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose any losses from theft in any SOFA he filed, each of which was filed under penalty of perjury.  Debtor failed to list any such losses despite his repeated testimony at the Section 341 meeting and 2004 examination that he has been the victim of theft by Todd Lacosse and/or Doug Nylander.

181.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose any losses from theft while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

182.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose any losses from theft while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

183.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

**COUNT 8:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE HOUSEHOLD GOODS AND FURNISHINGS**

184.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

185.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

186.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

187.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose any household goods or furnishings in his original Schedule B, filed under penalty of perjury.

188.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose an accurate inventory of household goods or furnishings in his Amended Schedule B, filed under penalty of perjury.

189.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose the true value of his household goods and furnishings in his Amended Schedule B, filed under penalty of perjury.

190.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his household goods and furnishing and their true value while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of

36

creditors when asked by Ms. Hagan if there were any material changes to advise her of.

191.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his household goods and furnishing and their true value while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

192.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case when he testified under oath at the 2004 examination that only a couple of pieces of furniture in his current home are new when in fact Debtor purchased tens of thousands of dollars worth of new household goods and furnishings for his current home from an interior design firm.

193.    Debtor failed to list the interior design firm, Tunde Interior Design, as a creditor in this case.  It appears that this was a knowing and intentional failure on Debtor's part to conceal the existence of a creditor that could establish, to a significant extent, the true inventory and value of his household goods and furnishings, and the false nature of his testimony regarding this issue.

194.    Moreover, the interior design invoices establish that Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case when he testified  that he only bought a living room couch, dining room table, kitchen table, maybe some odds and end chairs, and  maybe some sun room furniture like a wicker couch and a small love seat.

195.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

37

## COUNT 9: DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE BMW

196.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

197.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

198.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

199.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his leased BMW in any of his Schedules, filed under penalty of perjury.

200.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his leased BMW while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

201.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his leased BMW while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

202.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section

38

727(a)(4)(A).

## COUNT 10:   DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE LAND ROVER

203.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

204.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

205.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

206.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his leased Land Rover in any of his Schedules, filed under penalty of perjury.

207.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his leased Land Rover while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

208.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his leased Land Rover while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

209.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 11:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE JEWELRY AND FURS

210.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

211.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

212.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

213.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose any jewelry or furs in his original Schedule B, filed under penalty of perjury.  Debtor failed to list jewelry despite owning a Rolex, a second watch, cuff links and a wedding band.

214.    Moreover, in his May 2005 financial statement, Debtor listed $150,000 worth of jewelry and furs, none of which is accounted for in his bankruptcy Schedules or SOFAs.

215.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his jewelry and furs while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan

if there were any material changes to advise her of.

216.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his jewelry and furs while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

217.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 12:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE WEARING APPAREL

218.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

219.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

220.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

221.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose any wearing apparel in his original Schedule B, filed under penalty of perjury.  Debtor failed to list any wearing apparel despite obviously owning clothing which he wore to the 341 meeting and the 2004 examination.

222.    Debtor knowingly and fraudulently made a false oath or account in or in connection

41

with this bankruptcy case by failing to disclose his wearing apparel while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

223.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his wearing apparel while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

224.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 13:   DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE CASH ON HAND

225.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

226.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

227.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

228.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose any cash on hand in his original Schedule B, filed under penalty of perjury.  Debtor failed to disclose any cash on hand until specifically asked by the

42

Chapter 7 trustee how much cash he typically carries.

229.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose cash on hand while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

230.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his cash on hand while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

231.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 14:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE BANK ACCOUNT

232.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

233.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

234.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

235.    Debtor knowingly and fraudulently made a false oath or account in or in connection

with this bankruptcy case by failing to disclose his closed Comerica checking account in any SOFA he has filed, each of which was filed under penalty of perjury.

236.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his closed Comerica checking account while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

237.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose his closed Comerica checking account while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

238.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 15:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE INCOME FROM DEBTOR'S LAW PRACTICE

239.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

240.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

241.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section

727(a)(4)(A).

242.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income from his law practice for 2005 and 2006 in the first three SOFAs he filed, each of which was filed under penalty of perjury.

243.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income from his law practice for 2005 and 2006 while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

244.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income from his law practice for 2005 and 2006 while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

245.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 16:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE EXPENSES PAID BY LAW PRACTICE

246.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

247.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

248.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

249.    The money paid by the law practice or any other entity for the expenses listed on Schedule J should be disclosed as income, or the expenses should not be listed on Schedule J. Listing the expenses without listing the additional income used to pay the expenses distorts Debtor's actual income.

250.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income in the form of household expenses paid from his law practice in any of the SOFAs he filed, each of which was filed under penalty of perjury.

251.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income in the form of household expenses paid from his law practice in his Schedules I and J, and any amendments thereto, each of which was filed under penalty of perjury.

252.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income in the form of household expenses paid from his law practice while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

253.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income in the form of household expenses paid from his law practice while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true

46

and accurate.

254.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

### COUNT 17:   DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE INCOME FROM GOLDSTEIN ENTERPRISES

255.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

256.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

257.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

258.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income from Goldstein Enterprises (either as wages or household expenses paid) in any of the SOFAs he filed, each of which was filed under penalty of perjury.

259.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income from Goldstein Enterprises (either as wages or household expenses paid) while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to

advise her of.

260.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income from Goldstein Enterprises (either as wages or household expenses paid) while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

261.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A)._____

## COUNT 18:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE RENTAL INCOME

_____262.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

263.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

264.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

265.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose rental income from the Timberview and Autumnwood properties in any of the SOFAs he filed, each of which was filed under penalty of perjury.

48

266.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose rental income from the Timberview and Autumnwood properties while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

267.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose rental income from the Timberview and Autumnwood properties while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

268.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 19:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR FAILURE TO DISCLOSE OTHER INCOME

269.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

270.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

271.    Debtor's failure to disclose assets or transfers of assets in or to otherwise truthfully and accurately complete his Schedules and SOFA constitutes a false oath for purposes of Section 727(a)(4)(A).

49

272.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income from dividends, IRA distributions, interest and capital gains in any of the first three SOFAs he filed, each of which was filed under penalty of perjury.

273.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose rental income from dividends, IRA distributions, interest and capital gains while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if there were any material changes to advise her of.

274.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose rental income from dividends, IRA distributions, interest and capital gains while testifying under oath at the beginning of the August 17, 2007, Section 341 meeting of creditors when asked by Ms. Hagan if the Schedules and SOFA, as amended, were true and accurate.

275.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case by failing to disclose income from dividends, IRA distributions, interest and capital gains in his Schedule I, or any amendment thereto, each of which was filed under penalty of perjury.

276.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A)._____

## COUNT 20:   DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(4)(A) FOR ADDITIONAL FALSE OATHS

277.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

278.    Section 727(a)(4)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account."

279.    Debtor knowingly and fraudulently made a false oath or account in or in connection with this bankruptcy case during his testimony under oath at the August 17, 2007 Section 341 meeting.  Specifically, he was asked if had an ownership interest in any other home, vacant land or real property, other than Richland, Kernwood and Autumnwood.  Debtor testified falsely:

> A:    Six years.  It may be right before the six-year time period, but we lived at 2056 Timberview Drive in Okemos, Michigan, 48864.  That was before moving to Kernwood.

Exhibit 1, p. 7, lines 11-14.

280.    In fact, Debtor owned or had an interest in two other pieces of property within the six years prior to filing: his mother's house, which he inherited, sold and netted $130,000, and Timberview, which he sold on March 2, 2007, only three months before filing bankruptcy.

281.    Debtor knowingly and fraudulently made an additional false oath or account in or in connection with this bankruptcy case during his testimony under oath at the August 17, 2007 Section 341 meeting.  Specifically, Debtor understated the value of his jewelry by stating its' value was "maybe under a thousand dollars, maybe even under 500."

282.    In fact, Debtor owned a single Rolex watch with a value greater than $1,000.

51

283.    Moreover, only two years prior to this bankruptcy filing, Debtor's financial statement listed jewelry and furs worth $150,000.

284.    Debtor knowingly and fraudulently made an additional false oath or account in or in connection with this bankruptcy case during his testimony under oath at the August 17, 2007 Section 341 meeting when he testified that he had not given away, transferred, disposed of, or sold any item having a value of a $1,000 or more in the year before filing bankruptcy.

285.    In fact, Debtor sold a Rolex watch in January of 2007, only five months before filing, for $7,500.  Debtor sold the watch to a friend.

286.    Debtor knowingly and fraudulently made an additional false oath or account in or in connection with this bankruptcy case during his testimony under oath at the August 17, 2007 Section 341 meeting when he testified that he had not repaid any debt, in whole or in part, to a family member or friend in the year before filing bankruptcy.

287.    In fact, Debtor had been making monthly payments to repay a debt to his in-laws.

288.    Debtor knowingly and fraudulently made an additional false oath or account in or in connection with this bankruptcy case when he failed to disclose in his first three SOFAs, each filed under penalty of perjury, the payments he made to attorney Peter Teholiz for answering his bankruptcy questions.

289.    Debtor knowingly and fraudulently made an additional false oath or account in or in connection with this bankruptcy case when he claimed in his First Amended Schedule J, filed under penalty of perjury, that his wife was making their mortgage payments on their primary residence and on the Richland property.

290.    In fact, Debtor's wife had only $910 of monthly income, inadequate to pay even a

small portion of these mortgage payments.  The payments were made from an account or accounts in his wife's name, but funded by the Debtor.

291.    In filing inaccurate, meaningless Schedules, and providing false testimony, Debtor made it difficult for any interested party to assess his financial condition, or for the Chapter 7 trustee to administer this estate.

292.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(4)(A).

## COUNT 21:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(5) FOR FAILURE TO ACCOUNT FOR ASSETS

293.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

294.    Section 727(a)(5) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor has failed to explain satisfactorily, before determination of denial or discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

295.    Only two years before this case was filed, Debtor prepared a financial statement (Exhibit 3) which listed assets with a total value of $5,830,000.

296.    Debtor's bankruptcy documents make no mention of the possession, ownership, interest in, or transfer of the accounts and notes receivable, the jewelry and furs, household furnishings, the car, or the bank accounts listed in that financial statement.

297.    Further, neither Debtor's bankruptcy documents, nor his oral testimony, account for the dissipation of these more than $5 million in assets.

298.    Moreover, Debtor has failed to adequately account for how he spent his inheritance from his mother, including the amounts received from the liquidation of her house and car.

299.    Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(5).

**COUNT 22:    DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(2)(A) FOR TRANSFERRING PROPERTY WITHIN ONE YEAR BEFORE FILING THE PETITION AND FAILING TO DISCLOSE SAME WITH THE INTENT TO HINDER, DELAY, OR DEFRAUD HIS CREDITORS AND CHAPTER 7 TRUSTEE**

300.    The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

301.    Section 727(a)(2)(A) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition."

302.    In this case, Debtor transferred several items of property within one year of the filing of his petition, as described above, including but not limited to, the Richland property to his childrens' trust, a Rolex watch sold to a friend, four vehicles and a boat.  Debtor then concealed the transfers of this property by failing to disclose them in this bankruptcy documents and when asked by the chapter 7 trustee.

303.    Debtor also concealed several assets, including but not limited to, two leased vehicles an extensive and expensive collection of household goods and furnishings, and various sources of

54

income.

304.     Debtor's failure to disclose assets, income, and transfers of assets impedes the ability of the Chapter 7 trustee to properly administer this estate.  It also impedes the ability of other interested parties to accurately assess Debtor's financial condition.  It is notable in this case that the car leases Debtor failed to disclose both carried payments in excess of $1,000 per month, the household furnishings were purchased for tens of thousands of dollars, the Rolex watch was sold to a "friend," and after filing multiple Schedules and SOFAs and amendments thereto and giving lengthy testimony, Debtor's true monthly income and expenses remain unclear.

305.     His failure to disclose the transfers and assets demonstrates that his motive was to hinder, delay or defraud his creditors and the chapter 7 trustee.

306.     Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(2)(A).

**COUNT 23:   DEBTOR'S DISCHARGE SHOULD BE DENIED PURSUANT TO 11 U.S.C. SECTION 727(a)(3) FOR CONCEALING, DESTROYING, MUTILATING, FALSIFYING, OR FAILING TO KEEP OR PRESERVE DOCUMENTATION FROM WHICH HIS FINANCIAL CONDITION OR BUSINESS TRANSACTIONS MIGHT BE ASCERTAINED**

307.     The U.S. Trustee realleges and incorporates herein the allegations contained in paragraphs 1 through 133.

308.     Section 727(a)(3) of the Bankruptcy Code states that the court shall not grant a debtor's discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or

failure to act was justified under all of the circumstances of the case."

309.     In this case, Debtor has concealed records which would show exactly what his monthly income is from all sources.

310.     In this case, Debtor has concealed records which would show exactly what his monthly household expenses are.

311.     In this case, Debtor has concealed and/or falsified records regarding his household goods and furnishings by preparing an incomplete household inventory, and by failing to disclose his interior designer as a creditor in this case.

312.     Therefore, the Court should deny the Debtor a discharge under 11 U.S.C. Section 727(a)(3).

## CONCLUSION

313.     A Chapter 7 discharge is designed to give the honest debtor a fresh start.  Scott Goldstein has not been honest with this Court, the Chapter 7 trustee, the U.S. Trustee, or his creditors.  Mr. Goldstein comes before the court not as a typical *pro se* debtor, but as an attorney licensed to practice law in the State of Michigan, an attorney who understands the importance of filing accurate documents with the court, an attorney who advertised bankruptcy services on his website, an attorney who sought and received legal advice from a bankruptcy practitioner prior to and after filing this case.  This Debtor has repeatedly, blatantly, knowingly, and fraudulently failed to disclose all of his assets, failed to disclose transfers of assets, failed to disclose his true income and expenses, and made numerous other false oaths in his bankruptcy documents and testimony.  He has shown a pattern of dishonesty, fraud, and a reckless disregard for the truth.  He is not the honest debtor for whom a Chapter 7 discharge is intended.

THEREFORE, for the reasons stated above, the United States Trustee asks that the Court deny the Debtor's discharge pursuant to 11 U.S.C. Sections 727(a), or grant such other relief as the Court may deem just.

Respectfully Submitted,

HABBO FOKKENA
Michigan/Ohio Region 9

Dated: March 3, 2008                    By:    /s/_____
                                               Michelle M. Wilson(P65625)
                                               Trial Attorney
                                               Office of the United States Trustee
                                               330 Ionia Avenue, NW, Suite 202
                                               Grand Rapids, Michigan 49503
                                               (616) 456-2006